165 So. 325

GROSJEAN, Sup'r of Public Accounts, v.

STANDARD OIL CO. OF LOUISIANA.

No. 33603.

Dec. 2, 1935.

Rehearing Denied Jan. 6, 1936.

T. M. Milling and A. M. Curtis, both of New Orleans, and C. L. Yancey, of Tulsa, Okl., for appellant.

Gaston L. Porterie, Atty. Gen., Maurice B. Gatlin, of New Orleans, and Justin C. Daspit, Fred A. Blanche, and E. L. Richardson, all of Baton Rouge, for appellee.

BRUNOT, Justice.

This is a suit by the supervisor of public accounts of this state against the Standard Oil Company of Louisiana. It is brought under the provisions of Act No. 15 of the First Extra Session of 1934, for the payment of a tax of one cent per gallon on 8,857 gallons of petroleum product which the defendant had on hand at its bulk station in the city of New Orleans on October 17, 1934; and for the penalty, attorney's fee, and inspection fee, as provided by law.

This appeal is from a judgment in favor of the plaintiff and against the defendant for the sum of the tax, penalty, and fees, as prayed for in the petition.

The defense to the suit is based upon the alleged unconstitutionality of Act No. 15 of the First Extra Session of the Legislature of 1934. It is contended that the act is defective in that it violates section 16 of article 3 of the Constitution. It is also contended that the act violates section 22 of article 6 of the Constitution, as amended in 1928. With respect to defendant's first contention, i. e., that the title and text of the act are inconsistent for the reason that the purpose of the act, as expressed in its title, is to raise funds to stamp out tuberculosis in the state through the Board of Health, a state agency, while the act requires that the tax, when collected, shall be deposited in the state treasury, we are of the opinion that defendant has no interest in presenting such an issue. The pertinent part of the title is as follows:

"To provide revenue for the State Board of Health, for use in stamping out tuberculosis and in the care and treatment of tuberculosis patients who are bona fide residents of the State of Louisiana, by levying a tax on all kerosene, sold, used, consumed, handled or distributed in this State," etc.

The title also provides that the tax, when collected, shall be deposited in the state treasury.

The object of the act is to levy a tax for a specific purpose, which is to be achieved through a designated state agency. The defendant can have no interest other than to test the right of the state to levy and collect the tax. The named depositary of the tax, when collected, pending its transmission to the state agency which is charged with its expenditure, is a matter of concern to the State Board of Health alone. But we need not discuss this matter at all because section 2 of act No. 126 of 1928 makes it the mandatory duty of the collector of the tax to deposit it in the state treasury. The section reads as follows:

"That all fees, taxes, licenses or other funds and revenues collected by or for the account or support of the said State Board of Health or to be used in any of its work or heretofore paid to said board for any and all purposes, shall be paid by the party, concern, officer, board or commission collecting the same into the Treasury of the State of Louisiana * * * and such funds and revenues shall hereafter be appropriated by the Legislature of Louisiana according to law."

The provision of the act requiring that the tax, when collected, shall be deposited in the state treasury, could just as well have been omitted from the act, for, in either event, the state treasury was the proper depositary of the money thus collected pending its transfer to the Board of Health in accordance with the purpose expressed in the title of the act. It must be remembered that the title and text of legislative acts must be read and construed together; that all acts are presumed to be constitutional; and they may not be decreed otherwise except for some sound and cogent reason.

The respondent's second contention is that Act No. 15 of the First Extra Session of 1934 dedicates the tax levied by it to the stamping out of tuberculosis in the state, while section 22 of article 6 of the Constitution, as amended, dedicates all taxes levied on kerosene to the highway fund. The defendant has fallen into error. The constitutional provision relied upon reads as follows:

"On all kerosene or other explosives used in the generation of motive power, the Leg-islature may impose a tax to be collected as may be prescribed by law."

Act No. 15 of the First Extra Session of 1934 does not levy a tax on kerosene used in the generation of motive power, but the tax is upon kerosene sold, used, consumed, distributed, or handled in the state for domestic consumption. It is apparent that the kerosene tax authorized by the Constitution is a wholly different tax from the tax levied by Act No. 15 of the First Extra Session of 1934, the distinction being that one may be levied upon kerosene used to generate motive power, while the other is upon kerosene used, or intended, for domestic consumption.

It appears that defendant refines kerosene into a mineral spirits which is known to the trade as Varsol. Varsol is used as a cleaner's liquid and as a paint solvent. The tax sued for in this case was levied upon the mineral spirits known as Varsol. In paragraph four of its answer, in this record, the defendant says:

"Respondent specifically avers that Varsol, or mineral spirits, as refined and marketed by it, is essentially a cleaners naptha and that the provisions of Act 15 of 1934 (First Extra Session) are not applicable to said product, it being neither a Kerosene, an illuminating oil, or an oil for heating or cooking, nor a motor fuel."

The base of Varsol is kerosene, which, by a process of refinement, is converted into the mineral spirits which are sold to the trade under that name. The chemical processes by which kerosene is converted into Varsol does not affect the base of that

product, and therefore it is taxable under the provisions of the act.

For the reasons assigned, we are of the opinion that Act No. 15 of the First Extra Session of 1934 is constitutional, and the judgment appealed from is therefore affirmed at appellant's cost.

O'NIELL, Chief Justice (dissenting).

My opinion is that Act No. 15 of the First Extraordinary Session of 1934 is unconstitutional, in that its title is not indicative of its object. Section 16 of Article 3 of the Constitution requires that an act of the Legislature shall have only one object, and a title indicative of such object. The title of the act in question is not only not indicative of any object stated in the act itself, but is indicative of an object which is not mentioned anywhere in the act. The object expressed in the title is:

"To provide revenue for the State Board of Health, for use in stamping out tuberculosis and in the care and treatment of tuberculosis patients who are bona fide residents of the State of Louisiana, by levying a tax on all kerosene, sold, used, consumed, handled or distributed in this State," etc.

In the first section of the act it is declared:

"That in order to provide a revenue for the purpose set forth in this Act and in order to carry out the same, there is hereby levied a tax of one cent per gallon on all kerosene sold, used, consumed, distributed or handled in the State of Louisiana for domestic consumption."

But there is no such "purpose set forth in this act" as "to provide revenue for the State Board of Health," or the "stamping out of tuberculosis," or the "care and treatment of tuberculosis patients." In fact, I do not find the State Board of Health, or tuberculosis, mentioned or referred to anywhere in the act, except in its title. The act does not dedicate the proceeds of the tax "to provide revenue for the State Board of Health," or to the "stamping out of tuberculosis," or to the "care and treatment of tuberculosis patients." On the contrary, the second section of the act declares that all taxes, funds, and revenues collected under the provisions of the act by the supervisor of public accounts, whose duty it is to collect the tax, shall be paid into the treasury of the state, under the control of the treasurer of the state, and that "such funds shall hereafter be appropriated by the Legislature of Louisiana according to law." That might be sufficient to conform with the title of the act if the act itself made any appropriation, dedication, or segregation of the revenues to be derived from the tax, to the object indicated in the title of the act. But the declaration in the act, merely that the funds shall be appropriated by the Legislature according to law, is no direction at all as to the purpose for which the Legislature shall appropriate the funds. It goes without saying that all funds which the Legislature may appropriate out of the state treasury must be appropriated "according to law."

The Standard Oil Company of Louisiana, being called upon to pay the tax, has an interest in questioning—and hence the right

to question—the constitutionality of the statute by which the tax is imposed.

Believing that the statute is violative of section 16 of article 3 of the Constitution, I see no necessity for considering the other ground on which the defendant questions the constitutionality of the act.

ROGERS and ODOM, JJ., dissent.